Thank you. The last argument for today is appeal number 2009-3085, Adams v. SSA. Thank you, Your Honor. I'll be brief. It's an unusual personnel case coming up from the case against my client, Jay Adams, Administrative Law Judge of the Social Security Administration. It's heard by an Administrative Law Judge. The MSPB does not have any ALJs on its payroll, so what they do is contract out with other agencies to find one who could try the case. The ALJ here was from the National Labor Relations Board. That's Judge Kossel, just to identify some of the players. Lots of lawyers, lots of judges in this case. Our problem with Judge Kossel's decision, which is the controlling decision here since the decision on a petition for review, is basically it's a rather brief analysis. Judge Kossel, if you take a look at his decision, it's called an initial decision. It's in our blue brief. It's appendix page 7. It goes on for a few pages. He outlines the basic facts, and then he gets to the fundamental analysis of whether or not the agency's charge, which was failure to cooperate in this EEOC hearing, was founded or unfounded. And from there, he goes on to a very summary decision with respect or analysis of the decision concerning the penalty. You should also understand, if it's not already apparent, that with a case against the ALJ, unlike other cases before the MSPB, it's the MSPB that does the penalty determination, not the agency. The agency can ask for anything they want to, up to and including removal, but it's the board that makes the first decision on the penalty. In most civil service cases, the agency, of course, makes the decision on the penalty, goes up to the board. The board then reviews the agency's penalty analysis, not here. So here it's very important that the penalty analysis be reasonably articulate, just as the board would expect of an agency taking an action against a Title V employee who's not an ALJ. But if you take a look at Judge Kossel's decision, the first thing he does at page 10 of the appendix is go through the Privacy Act, and he says, well, I don't think the Privacy Act would have precluded Judge Adams from providing the information he was asked for at the hearing before the EEOC. But even if it does apply, there was a routine user exception, and therefore Judge Kossel was wrong on both counts. Was he wrong about that? Was the judge wrong about that? No. I don't think he was wrong. But the question here is not, in hindsight, whether or not the Privacy Act was relevant or had a routine user exception. The question is what happened at the EEOC hearing. What was known at that time to Judge Adams, and how was that handled then? This was the second time he had declined to testify in an EEOC proceeding. Excuse me, sir? No, sir. The record does not reflect, at least on my review, what occurred in 2003 or so. But in 2003 there was some type of EEOC proceeding where Judge Adams was told he had to cooperate in an investigation. That was not a hearing. That was an investigation. He was not investigated, and he declined to do that. No. He cooperated. He was told to cooperate, and he cooperated, as far as I know, as far as the record reveals. Maybe I'm mistaken. I thought that this issue had come up before in 2003. No, sir. Not the Privacy Act issue. Cooperation generally, yes. So they found that he failed to cooperate in the EEOC investigation? No. They told him to cooperate. He was reluctant to become involved in some aspect of an agency administrative investigation, not an EEOC hearing, and then management said cooperate, and he cooperated, as far as I know. Yes, but in the complaint, at least, it refers to that and acknowledges that ultimately he did, but it was after much resistance, and then it goes on to outline that resistance and the lack of cooperation by a client. He was told to cooperate. He cooperated. No further action was taken. Now, the issue before the MSPB hearing. What was the nature of that earlier proceeding? Excuse me, sir? What was the charge in the earlier proceeding? No, no, sir. It's not in the record before me that I've reviewed. I only look at the record that's before the MSPB wasn't there, and I did not handle this case before the MSPB. Maybe government counsel would know. I don't. The question here before the MSPB in this case was not just a general lack of cooperation. It involved Judge Adams' concerns under the Privacy Act, and his concerns were legitimate. The Privacy Act does have criminal sanctions for knowing violation. I don't know how many people are sitting in jail because of Privacy Act violations,  And Judge Kozol for the MSPB went through the Privacy Act analysis in retrospect. Well, it's only a reasonable concern if there's a reasonable construction of the Privacy Act that creates a problem. And what's the basis for saying that there is a construction of the Privacy Act that raises a problem, since the Privacy Act allows a routine use exception, says the agency can adopt regulations, and there are regulations here saying giving information in an EEO investigation is a routine use. I want to give you a very practical answer to that question, because it's a very good question. The routine user exception in the Privacy Act depends on the material that's included in a record system notice, as you mentioned, that's found in a federal register someplace sometime. And what was critical here, what should have, what could have, what would have resolved the whole problem, is if during the course of this hearing, or had the agency counsel spoken, that was Mr. Hernandez at the EEOC hearing, spoken to my client prior to the hearing preparing for the case, and said, look, as to your Privacy Act concern, we can take care of that, here's the agency record system notice, here it is from the federal register, take a look. But neither before the hearing, nor during the hearing, did either the EEOC judge, Judge Weaver, who made general statements about the Privacy Act, without granting immunity, she couldn't, or Mr. Hernandez, who also made general statements about the Privacy Act, stop, take five minutes, go to the Internet, find the record system notice, and say, look, you're allowed to talk about stuff at EEOC hearings, under this record system notice, which covers performance appraisals and other white records that are held by the Social Security Administration. I don't understand that. Firstly, you seem to argue both before and during. Before the hearing, I thought part of the concern in this case was that your client had really not put forth his concerns before the proceeding, before incurring the hundreds of dollars to travel and so forth. So I don't see, I mean, I don't know how you can argue here that they should have given him this information beforehand if he didn't raise his concern beforehand. That's their argument, not yours. No, ma'am. The EEOC judge in this case, Judge Weaver, came out with two findings of lack of, let's call it, hearing preparedness. One, as to my client. She felt, in retrospect, that he didn't cooperate. Second, as to agency counsel, basically, he didn't prepare his case, and he never talked to this witness beforehand. That was the EEOC finding. Now, what the agency then did was to take action against my client, and I'm not concerned whether they did or did not take action against Mr. Hernandez, but it's a legitimate concern. He never met with my client beforehand, even to prepare his testimony. Your client was obviously notified about this ahead of time, understood his obligation to testify. Didn't he have some sort of an obligation then to determine for himself whether there was any proper basis for asserting this Privacy Act issue? I think that's a very good question. It's a fair question. And I think it might be a conclusion on the evaluation of all the evidence that perhaps he should have gone up through the supervisory chain of command to figure out what to do about this in the absence of any contact from the designated agency counsel. It's something he could have done. Now, why didn't he do it? He explained that at the hearing because he had his own litigation with his agency management and didn't want to go to them relative to this case. Now, whether that's a good reason or a bad reason or a sufficient reason or no, the difficulty here is there were other factors involved. For example, consider what happened at this hearing. One, the failure of anybody to stop the hearing for a moment, go to the Internet, take five minutes and get the record system notice and show it to them and say, see, this is what it allows us to do. Go ahead and testify. And, you know, he's an administrative law judge. He could have made his own conclusions. Two, the agency attorney, Mr. Hernandez, said, all right, we can take care of this. I'll go to the witness as to whom these records pertain, that's Ms. Gregg, and we'll get a waiver from her under the Privacy Act. And I remember the statement in the hearing. If we have to wait until 7 o'clock in the evening to do that, we can do that. Nobody ever did that. Nobody ever did that. Why didn't the attorney who was handling the case and the administrative judge that was overseeing the case have every reason to expect that your client was going to fully testify? Well, whatever expectation they may have had kind of dissolved when he was brought into the hearing room without having met with agency counsel in advance and sat down and started to be asked these questions. Yeah, because this was not resolved well in advance of this proceeding. That's one way to look at it. Any witness in an EEOC hearing. Well, we're talking about failure to cooperate, so I think you have to take that into account. It is a factor with respect to whether he should have pushed up the supervisory chain of command, even though he was at odds with them at the time. That is one factor, but you have to take, in a mitigation analysis or an analysis of lack of cooperation, if you take a look at some of the cases that I've mentioned in our brief, a good one is Phillips v. General Services Administration, a credit card problem. Another one is Van Fossen v. Department of Housing and Urban Development, a problem with some outside employment. You take a look at the totality of the circumstances. You weigh the circumstances on two bases. One, to see if the underlying charge, insubordination or in this case failure to cooperate, is sustainable on all the circumstances. And two, let's say it is, take a look at the mitigating factors. What happened at the hearing? The failure to get a waiver from Ms. Gregg, the failure to show him the Privacy Act notice, the failure for the agency simply to introduce all the darn records and let the agency take responsibility under the Privacy Act and then say, here, they're in the record. Start asking this gentleman questions. There are a number of things that could have been done. The only thing mentioned by Judge Kosol in his relatively abbreviated analysis, if you take a look at the very brief decision, he jumps from his conclusions as to the Privacy Act, he goes through the jurisdictional issues, then two pages later, at conclusion, he's talking about, well, what about that incident in 2003 anyway, which had nothing to do with the Privacy Act? So Judge Kosol, having heard all the evidence, writes a very summary decision, makes some conclusions, but doesn't go through a proper analysis of the failure to cooperate or, even if you sustain that, the mitigating factors. Do you want to reserve the balance of your time? I would appreciate it. Thank you very much, sir. All right. Let's hear from Ms. Dern. Good morning. Good morning, Your Honors, and may it please the Court. Petitioner concedes this morning that the Board properly found that Judge Adams' testimony would not have violated the Privacy Act. He asserts that there were justifications still for his failure to testify, but all of those arguments go to the penalty and whether it should have been mitigated. One thing that's puzzling me about how all of this went down was the fact that her personnel records, which is what they were talking about in the Privacy Act, were not in the record. Am I recalling it wrong that the government objected to their going in the record and the judge found the EEOC, whatever, hearing officer, found that they were not relevant? That's correct, but it needs a little explanation. The agency objected to putting the records before the EEOC hearing because the records pertain to Ms. Gregg's performance when she was in the prior office, and the agency said that was not relevant to her selection in the Seattle office. I'm sorry, Albuquerque office. But the reason that Mr. Smith wanted Judge Adams' testimony rather than or in addition to the records was that he believed that Judge Adams' testimony about Ms. Gregg's performance would show something different than what was in the record. What's puzzling to me, if you step back a moment, is if the judge or the EEO judge and the government had already argued and agreed that all of her performance at this earlier point of time was not relevant to anything at issue here, why his testimony about that same performance would have even been relevant? And if you agree with that, it's kind of an odd situation to be in a position of saying we're going to discipline him for being uncooperative because he's not going to testify about stuff that in our view, in everyone's view, is not relevant to this proceeding in any event. Well, I think that the relevance of her performance records were not only because they were in another office, but, well, I think that was it. So the government's position was all of her time and all of her performance, which involved Mr. Adams, was not relevant to anything going on in this proceeding. That's correct. And the EEO judge agreed with that, which is why she agreed that those records shouldn't come in. So everything, am I right? Well, I would say that the EEO judge agreed that the agency didn't have to produce the records. However, the same EEO judge approved Judge Adams' testimony, knowing that Judge Adams' testimony was going to go to Ms. Gregg's performance at that prior office. So it's almost as if the EEO judge was of two minds. He agreed that the agency didn't have to produce the records as to that performance, but he also agreed that Mr. Smith had a right to put on evidence about Ms. Gregg's performance through Judge Adams' testimony of her actual performance. But how could anyone at the end of the day consider the testimony of Mr. Adams with regard to someone's performance when they've said that they're not going to admit the records of her performance for the same period because they're not relevant? How does this all play out? I don't understand. Well, I wouldn't say that I completely understand why the EEOC judge found the records initially unnecessary. What page is that ruling in? What page is that ruling in? Well, there's no page in the appendix that shows Judge Adams not requiring the agency to produce the records until after the hearing, but it's in the hearing order. In the appendix, there are the documents showing that Mr. Smith had requested Judge Adams to be approved as a witness for the specific purpose of testifying about Ms. Gregg's performance at the prior office. You and Judge Prost are talking about a ruling that the records of her performance were irrelevant. I'm just asking you where do I find that ruling in here? I'm sorry, that's a good question because I don't believe that ruling is in there at all and that actually makes me reflect. I didn't make that up. No, I think what happened was the agency had objected to the introduction of the records and I, as I stand here, can't be certain. Up until that point, I can see that the judge had not ordered the agency to produce those records. And the agency had taken the position that the records were not relevant. Yes, without a doubt, the agency had taken that position. That's without a doubt. And it's also without a doubt that at the point of the EEOC hearing, the judge had not ordered the agency to produce those records, but it's also clear that the EEOC judge had approved Judge Adams as a witness for Mr. Smith knowing that his testimony was going to go to Ms. Gregg's performance. So the agency is taking action against Mr. Adams because he didn't cooperate with respect to testifying on a matter that the agency had taken the position was irrelevant to these proceedings. Yes, because notwithstanding the agency's litigation position, in fact, Judge Adams was ordered by the EEOC to appear and testify and the agency is obligated, notwithstanding its litigating position, is obligated to follow the orders of the EEOC, produce agency employees, and require them to testify. What I'm confused about is whether what the agency decided not to introduce were the personnel records. That's correct, Your Honor. The agency was objecting to its litigation position was that those records were not relevant and therefore it wouldn't produce them. How could that possibly be correct? How could the records be irrelevant? These were the records of the job she was occupying at the time she was appointed, right? No. No, these were the earlier jobs. They were from a prior job. How distant in time was the prior job? I believe she had been at the current job for about 18 months. That's my best recollection, so I think it was at least 18 months prior, but the agency's litigating position was that she was selected based on her performance at the current job, not based at all on her performance at the job. And that issue was before the tribunal at the time. That was an issue the agency did not give up. That was the very issue that was the subject of the proceeding. Yes. And that performance was the subject of the testimony that the agency wanted to solicit or the agency was interested in hearing. Well, her performance at her current job, the agency certainly never disputed that that was relevant. The agency did dispute that her performance at her prior job was relevant and for that reason was objecting to producing records connected to her performance at the prior job. But Mr. Smith contended that it was relevant and that he wanted to produce testimony from Judge Adams going to that performance and the EEO judge approve that request and order. So the agency's position must have been that Judge Adams' testimony was completely irrelevant to this position. There would be no basis for saying his personal views of this employee during this period of time is relevant where the personnel records for the same period of time are not relevant, right? So the agency's position must have been that anything he had to say was completely irrelevant to this proceeding, right? That is correct, but it still does not give either the agency or Judge Adams. For example, if the agency had been over its objections ordered by the EEOC to produce the records, the agency could not at that point say we still won't produce the records because in our opinion it's irrelevant. Just so, even though the agency might have believed Judge Adams' testimony was irrelevant, once the EEOC ordered him to be present and testify, the agency was obligated to produce him and to direct him to testify, which is what they did, and he did go to the hearing, but he refused to testify. What if he had come to the hearing, and as I recall the transcript, initially he came and he said I need the records, right? I mean there were some initial resistance. That was not his initial response. Was that part of the early resistance because he wanted you to produce the records? No, Your Honor, respectfully I have to disagree with that. The very first question that he was asked was whether Ms. Gregg was one of the best office managers he had ever supervised, and he immediately said I have a problem with this, I have privacy concerns, and I want to discuss this. That was the very first time that he, I mean after he stated his name and the number of years he had worked for the agency. The first substantive question about Ms. Gregg, which appears in our appendix at page 73, he was asked was Ms. Gregg one of the better managers you worked with, and he immediately responded, I have a problem with this question, it's going to cause me to violate the Privacy Act, and everything developed after that. He was told by the EEOC judge that first of all he was not being asked to produce records, he was asked for information based on his personal experience, and he was also told that even to the extent records might be involved, that there was an exception, a routine use exception, for providing such information to the EEOC. If you look at page 29 of the appendix to the blue brief, there's this articulation in the agency's position about the irrelevancy of the records, but I don't see that the judge there rules, the administrative judge rules, that the performance in the Albuquerque office is irrelevant. And I can see, Your Honor, I'm not sure that she actually ever did rule, and now that I think about it, it kind of makes sense that she didn't, although she had not to that point ordered the agency to produce the records, it does make sense to me that she hadn't made a final ruling on the relevancy of that prior performance, since she did in fact approve Judge Adams to appear as a witness on Mr. Smith's behalf and testify about Ms. Gregg's prior performance. And I can see that there's nothing in the appendix, and I don't think there's anything in the record that I recall that is an explicit ruling on the relevance of Ms. Gregg's prior performance at the time of this hearing. Not only did the EEOC judge make Judge Adams aware of the fact that what was being sought was his opinion based on personal experience, and that even if records were involved, there was a routine use exception, Judge Adams in fact had been notified by the agency before the hearing about the routine use exception for records in EEOC hearings, and he admitted this at the hearing. If you look at the appendix attached to our brief on page 83, Judge Adams concedes that when he was notified about the EEOC hearing, the agency's letter directed him or cited to 29 CFR 161614.102, and he testifies at the EEOC hearing that he searched that citation and that he read it, and he saw that it required agencies to ensure that full cooperation is provided by all agency employees to EEOC proceedings, and that full cooperation means, includes, granting the commission of routine access to personalized records of the agency in connection with investigation. So even before Judge Adams came to the hearing, the agency had directed him to legal authority for the disclosure of records in EEOC hearings, and he further went on to concede on page 88 of our brief that he agrees with the EEOC judge's statement of the law as to EEOC proceedings, but that that has no bearing on other civil or criminal liability that he may face. So he appears to even concede that he could disclose this information in the context of the EEOC hearing, but that he's just generally concerned about liability. It's also important to note that at his own MSPB hearing, and this fact was not lost on the MSPB administrative law judge, that Judge Adams did testify about Ms. Gregg's performance, and when he was questioned about whether that didn't violate the Privacy Act in his mind, he explained, well, that's because I'm giving positive testimony about Ms. Gregg, whereas negative testimony would be different, and he was further asked, well, but you didn't even give positive testimony about Ms. Gregg in the EEOC hearing, and he conceded that was true. So basically, because my time is quickly running out, it's very clear that Judge Adams did not have a valid excuse for not answering questions at the EEOC hearing. All of his comments about what he knew or didn't know or believed or didn't believe go to mitigation of the penalty. The administrative judge spread out his comments on the mitigating factors throughout his opinion. We articulated them in our brief, and I think that the facts do support the imposition of the 14-day suspension. If there are no further questions, thank you, Your Honors. Thank you very much. Mike, you have the last word. A few words before lunchtime, thank you, Your Honor. Why did these problems arise? Mr. Smith and his prose say, of course their records were relevant. Of course they should have been in the investigation file. This should never have occurred. If the investigation file had been complete, the records would have been there. He could have been asked about it. We wouldn't be here today. This happens all the time in prose litigation and litigation before the EEOC, where the agency's record, which the agency controls, is just not properly developed, and it leads to problems like this. But it was the agency's position all along that her performance during that time period was not relevant. I think you're right, but I wasn't involved in this back in the EEO days. I think you are correct. And then what happened at the hearing, as a practical matter, the prose, Mr. Smith, decided he was going to withdraw his request for Judge Adams after this whole long call. He decided he had subjected Judge Adams, I guess, to enough embarrassment, and said that's it, I'll release this witness. Then Mr. Hernandez, the agency representative, started asking questions about Ms. Gregg. So the roles kind of got flip-flopped. And it really is immaterial whether in hindsight we take a look at the record system notice, which was absolutely critical. What 29 CFR 1614 says isn't significant. These are not EEOC records. They're Social Security Administration records. They're not Office of Personnel Management records. They're SSA records. So where you look for the routine use exception is the SSA's record system notice, which everybody has included in the appendix. That's why it's so important. All they had to do was give it to the man and show him that SSA records could properly be disclosed under the routine use exception defined by SSA and only SSA to EEOC. All these record system notices are different. It's not one form fits all. I guess he could have asked also. You know, he could have. Please show me what the authority is for this coming within the routine use exception. He could have had he thought of that. The Privacy Act is a pretty complex piece of legislation. It's not administered by administrative law judges who do disability cases. I would have asked for it, but then I'm a personnel lawyer to sit there and say, your record system notice requires a fair knowledge of the Privacy Act. And, in fact, at the MSPB hearing, which my friend… I don't think it requires a fair knowledge of the Privacy Act to say, please show me where in the Privacy Act or in regulations under the Privacy Act that this disclosure is authorized. Well, that's kind of what this whole colloquy went on for page after page after page of the EEOC judge saying, gee, we see these types of records all the time. Mr. Hernandez says, you know, I've litigated these cases before, and these cases, you know, it doesn't seem to me there's a Privacy Act exception. I mean, somebody might have thought of finding the routine use, whether it was him, whether it was the EEOC judge, Judge Weber, whether it was Hernandez. Somebody should have come up with this idea. And, again, the EEOC was quite critical of Mr. Hernandez, not just my client here. And if I may, just one last comment here. In hindsight, we've learned a lot. In our reply brief at page 23, here's the colloquy. Would my client have done things differently had he known the information about the Privacy Act that he gleaned by the time of the MSPB case back when he was testifying before the EEOC? He says, well, the question of this whole handful, everything we've talked about totally available to you before you went into this hearing, would that have affected the way you handled yourself at the hearing? That's his counsel's questions. It would certainly have given me some additional information that I could have made a more informed decision of being and his counsel cut him off and says, okay, and things go on. All we're asking for is a fair, articulated explanation of both the issue of whether he truly failed to cooperate under the circumstance, and if he did, take a look at the mitigating circumstances. Those are not the circumstances that were described in Judge Kossel's opinion. Thank you. Thank you very much. Thank you, counsel, for both sides. And that concludes our hearings for this morning. All rise.